**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-02119-RM-MLC

SUREN TATUYLAN and PET SISTERS, a Florida charitable organization,

    Plaintiffs,

v.

CITY OF AURORA, and
JENEE (aka JENNEE) SHIPMAN, in her individual and official capacity,

    Defendants.

---

## ORDER
---

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order ("Motion") (ECF No. 31), requesting an order to restrain Defendants from euthanizing Plaintiffs' dog, Bandit, pending the final outcome of this case. Defendants filed a response, to which Plaintiffs did not reply. Thereafter, the Court *sua sponte* directed the parties to brief the application, if any, of the *Rooker-Feldman* doctrine. The Motion is now ripe for consideration. Upon consideration of the Motion, Response, the *Rooker-Feldman* briefs, the court file, and the applicable rules, case law, statutes, and Aurora Municipal Ordinances, and being otherwise fully advised, the Motion is **DENIED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

This is Plaintiffs' second motion requesting temporary injunctive relief. Their first motion for temporary restraining order was denied for failure to show the requirements for relief

are met.  The Court denied the first motion without prejudice.  The second Motion, along with the record, shows the following.[1]

Plaintiff Suren Tatulyan ("Mr. Tatulyan") resides in Aurora, Colorado where he owns a dog named Bandit.  In Aurora, pit bulls are a restricted breed.

On January 4, 2017, Bandit bit a FedEx driver who was delivering a package at Mr. Tatulyan's residence.  (*See* Scheduling Order, Undisputed Facts at ¶2, ECF No. 27.)  The City of Aurora impounded Bandit and issued a Notice of Hearing Regarding Disposition of Animal ("Notice"), charging Mr. Tatulyan with violations of four sections of the Aurora Municipal Code ("Code"), and setting a disposition hearing/arraignment date for January 13, 2017.   The Notice stated that "[t]he City Attorney will request that the Court hear any relevant, admissible evidence either party desires to submit regarding appropriate disposition of this animal."  (ECF No. 35-1.)  The Notice also advised: "**YOU ARE URGED TO PRESENT ANY EVIDENCE YOU DEEM RELEVANT TO THE APPROPRIATE DISPOSITION OF THE ANIMAL.**"  (*Id.* (emphasis in original).)

Mr. Tatulyan appeared *pro se* at the hearing with his son, Albert Tatulyan ("Son"), who speaks English.  At the hearing, Judge Dion Arguelles of the Aurora Municipal Court asked Son if Mr. Tatulyan has a vision or language issue, to which Mr. Tatulyan replied "vision." (ECF No. 35-2, page 1.)  The Aurora Court then engaged in a colloquy with Mr. Tatulyan in English.  Mr. Tatulyan advised the Aurora Court that his native language is Russian, but he has been in the United States for almost 20 years, using, speaking, and writing English.  (ECF No. 35-2, page

---

[1] Both sides argue a number of "facts" without providing any supporting evidence, *e.g.,* what testimony was allegedly provided by Defendants at the impound hearing.  Some of such facts are irrelevant to the claim at issue, *e.g.*, what Defendants' expert allegedly opined.  And, many of such facts are undisputed, and the Court has assumed the same to be true for purposes of this Motion.  Further, those facts which are material to the resolution of the Motion are supported by evidence the parties provided, *e.g.*, Mr. Tatulyan's affidavit and transcripts of state court proceedings.

2.)[2]  The Aurora Court specifically asked Mr. Tatulyan whether he would "feel that you'd be better off with a Russian interpreter," but he declined.  After "find[ing] that we are conversing in English, it seems, adequately," the Aurora Court proceeded with the hearing on the charge of aggressive or dangerous animal.  (ECF No. 35-2, pages 2, 4.)  The issue of whether Bandit is a restricted breed was continued until the DNA test results were obtained.  (ECF No. 35-2, page 3.)  At the end of that hearing, the Aurora Court found that Bandit posed a danger to the community and ordered Bandit surrendered to Animal Care for disposition (the "Surrender Order").  (ECF No. 35-2, page 6.)[3]

Mr. Tatulyan retained an attorney after that hearing, whose request for a translator was granted.  There were apparently two other hearings before the Aurora Court after the impound hearing.  One hearing involved Mr. Tatulyan's request to allow his expert to conduct a "SAFER test" on Bandit, to evaluate his temperament.  Such request was allegedly denied.  Instead, Defendant Aurora conducted a Mars Wisdom DNA test.

The other hearing occurred on March 29, 2017, before Judge Shawn Day.  (ECF No. 31-1.)  As shown by the transcript of that hearing, as relevant here, three things occurred.  First, Mr. Tatulyan's attorney informed Judge Day that she had filed an appeal to the Arapahoe District Court of the Surrender Order.  Next, Mr. Tatulyan, with the assistance of counsel, pled guilty to three of the four charges (the fourth was dismissed) and waived his right to appeal.  Those charges were: dog running at large; keeping an aggressive or dangerous animal; and unlawful keeping of a restricted breed of dog.  Mr. Tatulyan did not, however, waive his right to appeal the Surrender Order.

---

[2] The page numbers referenced are those assigned to the document by the court's CM/ECF system.
[3] The Court notes that Plaintiffs argue, without evidentiary support and contrary to the record, that the issue of whether Bandit is a pit bull was part of the disposition (impound) hearing.

Mr. Tatulyan, however, filed but did not continue his appeal of the Surrender Order. Instead, on August 24, 2017, he transferred a one-half interest in Bandit to Pit Sisters. And, on September 1, 2017, Mr. Tatulyan (and Pit Sisters) filed the lawsuit now before this Court. Mr. Tatulyan thereafter let his state court appeal be dismissed for failure to file his opening brief.

In their third complaint ("Complaint"), Plaintiffs bring one claim under 42 U.S.C. § 1983, the denial of due process "regarding the seizure of bandit." Although not a model of clarity, it appears Plaintiffs challenge the process Mr. Tatulyan was afforded before the Aurora Court. Specifically, Plaintiffs contend that their due process rights were violated because (1) Mr. Tatulyan allegedly required an interpreter but was not provided or offered one at the January 13, 2017, impound hearing;[4] (2) Mr. Tatulyan allegedly was not provided a meaningful opportunity to present evidence or represent himself at the impound hearing; and (3) Defendants allegedly refused to conduct (or allow Mr. Tatulyan to conduct) a SAFER test on Bandit to evaluate his temperament.

At issue now is Plaintiffs' second motion for temporary restraining order. The Motion, unfortunately, still falls short of showing the extraordinary relief requested may be had.

## II. STANDARD

### A. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine,[5] federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

---

[4] Referred to in the papers as a "dispo" or "disposition hearing." (*E.g.*, Motion, p. 2.)
[5] Based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Colombia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

### B. Standing

Article III standing is jurisdictional. Therefore, "where the record reveals a colorable standing issue, [courts] have a duty to undertake an independent examination (*sua sponte* if necessary) of that issue." *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018) (quotation marks and citation omitted). Standing requires a plaintiff to have: "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *In re Peeples*, 880 F.3d at 1212 (quoting *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)). A plaintiff bears the burden of showing such requirements are met. *In re Peeples*, 880 F.3d at 1212.

### C. Injunctive Relief

Plaintiffs' Motion is titled as a request for a temporary restraining order ("TRO") but requests relief until the final determination of this case. In addition, the Motion is not *ex parte* but, rather, fully briefed after notice. *See* Fed. R. Civ. P. 65(a) & (b). The Motion also fails to cite to D.C.COLO.LCivR 65.1 or attach a proposed order for the Court's consideration. Thus, it is more in the nature of a request for preliminary injunction. *See Brown v. Colorado*, No. 16-cv-02018-DME-NYW, 2017 WL 4075139, at *2 (D. Colo. Sept. 14, 2017), report and recommendation adopted without objection by Order entered December 5, 2017 (Ebel, J.). Regardless, as the relevant requirements are the same, the Court will consider the Motion as a request for a TRO or, in the alternative, a preliminary injunction.

In order to obtain injunctive relief, the plaintiff must establish: "'(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public

interest.'" *Diné Citizens Against Ruining our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)); *Watts v. Karmichael Family, LLC*, No. 07-cv-00638-MSK-MJW, 2007 WL 1059051, at *1 (D. Colo. Apr. 4, 2007) (unpublished) (motion for temporary restraining order is examined under same standards applicable to requests for preliminary injunction). The Tenth Circuit no longer applies a "modified test"[6] for determining preliminary injunctive relief, finding it inconsistent with the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *Diné Citizens*, 839 F.3d at 1282. "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Diné Citizens*, 839 F.3d at 1281 (citation and quotation marks omitted).

### III. ANALYSIS

#### A. *Rooker-Feldman*

Defendants argue the *Rooker-Feldman* doctrine applies while Plaintiffs argue it does not. While Plaintiffs raise a number of arguments, the Court finds one has merit. Plaintiffs contend the doctrine does not apply because the state court action must have been concluded prior to the commencement of the federal action. The Court agrees.

Prior to the Supreme Court's decision in *Exxon Mobil Corp., supra*, the courts applied the doctrine to state court decisions which were not final. *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006). "Under *Exxon Mobil*, *Rooker–Feldman* applies only to suits filed after state proceedings are final." *Guttman,* 446 F.3d at 1032; *see also D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013). Thus, in *Guttman*, the Tenth Circuit

---

[6] Under the "modified test," when the other three requirements for preliminary injunctive relief tip strongly in the movant's favor, the test is modified so that the movant may meet the likelihood of success on the merits requirement "'by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Diné Citizens*, 839 F.3d at 1282 (quoting *Davis*, 302 F.3d at 1111).

found that a plaintiff's federal lawsuit was not barred where his petition for certiorari to the New Mexico Supreme Court was pending when he filed the federal lawsuit. This was so even though plaintiff's petition for certiorari was denied just one month (May 16, 2003) after his federal lawsuit was filed (April 17, 2003). *Guttman,* 446 F.3d at 1030, 1032.

In this case, Plaintiffs filed their federal lawsuit on September 1, 2017 (ECF No. 1). Mr. Tatulyan's appeal before the Arapahoe County District Court was still pending. It was not dismissed until September 11, 2017, 10 days later. (ECF No. 45-7.) As such, *Rooker- Feldman* does not bar this federal suit.

### B. Standing: Plaintiff Pit Sisters

Previously, in its Order denying Plaintiffs' first Motion for Temporary Restraining Order (ECF Nos. 2, 9), the Court questioned whether Plaintiff Pit Sisters has standing to sue. (ECF No. 9, n.5.) Even with a fuller record, the Court discerns no plausible basis for Pit Sisters to assert Article III standing in this case. As discussed in this Order, the challenged conduct is the alleged failure to provide a translator, to provide a meaningful opportunity to participate in the impound hearing, and to allow a SAFER test. Such conduct, however, was directed to Mr. Tatulyan. Further, the injury claimed is the violation of due process rights allegedly owed to Mr. Tatulyan related to or before the Aurora Court, to which Pit Sisters was a stranger. Accordingly, standing has not been shown. Even assuming, *arguendo*, Pit Sisters has standing, relief may be not afforded for the reasons stated below.

### C. Injunctive Relief: Substantial Likelihood of Success on the Merits

To begin, the Court examines what claims (or allegations) it is to consider in evaluating "success on the merits." As stated, Plaintiffs' Complaint alleges three bases in support of their one claim. In their Motion, however, Plaintiffs contend Mr. Tatulyan was denied "several other

due process rights,"[7] but none of such rights are claimed or alleged to have been violated in the Complaint. Accordingly, the Court will not consider them. *See Diné Citizens*, 839 F.3d at 1283, 1284 (discussing plaintiffs' likelihood of success on the merits "of their claims").[8] Instead, the Court examines Plaintiffs' Motion in light of their allegations.

### 1. *Denial of Procedural Due Process for Failure to Provide a Translator*

Plaintiffs' first due process challenge asserts Mr. Tatulyan was denied due process during the impound hearing as he was not afforded a translator. Defendants argue that Plaintiffs fail to show that procedural due process requires that a translator be provided at the impound hearing and, even if such a requirement exists, Mr. Tatulyan decided to proceed without an interpreter. The Court agrees.

Plaintiffs cite to one case, *United States v. Lopez-Collazo*, 824 F.3d 453 (4th Cir. 2016), in support of their arguments but provide no analysis of how this case applies. Moreover, *Lopez-Collazo* does not support their position. There, the Fourth Circuit stated that an alien subject to the removal process was entitled to an "opportunity to be heard at a meaningful time and in a meaningful manner." 824 F.3d at 461 (citation and quotation marks omitted). Such is not the case here. At issue is a state court surrender proceeding over whether Bandit is an "aggressive or dangerous animal."

Even assuming, *arguendo*, that Mr. Tatulyan had a procedural due process right to a translator at the impound hearing, Plaintiffs fail to establish a substantial likelihood of success that such right was allegedly violated. In evaluating Plaintiffs' request of temporary relief, the

---

[7] For example, Plaintiffs argue that Mr. Tatulyan's due process rights were violated because the Code did not protect a person's Fifth Amendment rights with respect to the impound hearing. But, although there is a bare reference to the Fifth Amendment, the Complaint contains no such claim.
[8] Defendants did address these purported rights in their Response, such as Plaintiffs' claim (in their Motion) that somehow their due process rights were violated because the Code does not protect a person's Fifth Amendment rights. Aside from failing to allege any such violations in the Complaint, as Defendants argue, Plaintiffs fail to provide any legal authority to support any such violations.

8

court makes "'a preliminary estimate of the strength of the plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case.'" *Coalition of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2948.3, at 213–14 (2013)). The "plaintiff must present a prima facie case but need not show a certainty of winning." *Coalition of Concerned Citizens*, 843 F.3d at 201 (quotation marks and citation omitted).

As stated, Plaintiffs rely on *Lopez-Collazo*; that case, however, demonstrates why they fail to make such a showing. There, the Fourth Circuit found a "meaningful opportunity" to be heard did not exist "when the alien [did] not understand the proceedings without the aid of a translator"; "wherein the alien and decision-maker could not understand each other"; and where there was "abundant evidence" that the alien "required translation assistance in order to understand" the notice he received and legal proceedings. 824 F.3d at 461 (citation and quotation marks omitted). The record does not support such a finding here.

In their Motion, in reliance on Mr. Tatulyan's affidavit, Plaintiffs assert that "Mr. Tatulyan *advised the Court at that hearing*, that he did not understand English well enough to understand what was occurring." (ECF No. 31, page 2 (emphasis added); No. 1-2.) Such assertion, however, is not supported by his affidavit. Instead, Mr. Tatulyan's affidavit states that he "did not understand the nature of the impound hearing," and "was not provided any translation." (ECF No. 1-2, ¶¶3, 5.) A review of the transcript of the impound hearing, however, shows Mr. Tatulyan affirmatively represented he understood the proceeding; and no translator was provided because Mr. Tatulyan made no such request and specifically declined the opportunity to have one.

9

>THE COURT: Your native language.

>MR. TATULYAN: Russian.

>THE COURT: Russian. Do you -- so how long have you been here in the United States?

>MR. TATULYAN: 19 years, 20 almost.

>THE COURT: So you've been using English and Speaking English?

>MR. TATULYAN: Yes. Writing too.

>THE COURT: Okay. Do you speak English every day?

>MR. TATULYAN: Not so much, but speak English.

>THE COURT: Are you comfortable with us conversing here in English or do you feel that you'd be better off with a Russian interpreter?

>MR. TATULYAN: No, I don't want to take your time, because I understand what the prosecutor wanted and we go to the -- two charges today and one later. Everything is perfect.

>THE COURT: Do you understand everything I am saying to you today?

>MR. TATULYAN: Yes, sir.

>THE COURT: The Court will find that we are conversing in English, it seems, adequately. Did you have a chance to read your rights here?

>MR. TATULYAN: Yes, sir.

>THE COURT: Do you have any questions about those rights on that form.

>MR. TATULYAN: No, sir.

(ECF No. 35-2, pages 2-3.) And, when Mr. Tatulyan did request a translator (albeit through counsel after the impound hearing), he was provided one. Therefore, even accepting the

statements in Mr. Tatulyan's affidavit, Plaintiffs fail to establish a substantial likelihood of success on the merits on such allegations.[9]

### 2. *Denial of Procedural Due Process for Failure to Provide Meaningful Opportunity to Present Evidence or Represent Himself at Impound Hearing*

Plaintiffs' next due process challenge is Defendants' alleged failure to provide Mr. Tatulyan a meaningful opportunity to present evidence or represent himself at the impound hearing. To the extent Plaintiffs' arguments here are based on the alleged failure to provide a translator (*see* Motion, pages 6-7),[10] this due process challenge fails for the same reasons as his first. Moreover, the impound hearing transcript shows the following:

> THE COURT: Are you prepared to proceed on the dispo hearing today, Mr. McDaniel?
>
> MR. MCDANIEL: Yes, the City is prepared to proceed.
>
> THE COURT: Mr. Tatulyan, are you prepared to proceed on the dispositional hearing on the charge of aggressive or dangerous animal?
>
> MR. MCDANIEL: Yes, Your Honor, correct.
>
> THE COURT: Okay.
>
> MR. TATULYAN: And I got some letters from the neighbors and photos. This dog is not aggressive.

(ECF No. 35-2, page 4.) Plaintiffs do not dispute this exchange occurred at the hearing. Accordingly, Plaintiffs have not shown a substantial likelihood of success on the merits of their claim based on such allegations.

---

[9] Plaintiffs had an opportunity to reply and submit additional matters for the Court's consideration, and to address Defendants' response and submission, but did not do so. (*See* Docket.)

[10] To the extent Plaintiffs argue this was because the Notice was constitutionally deficient, no such claim is alleged in the Complaint. Moreover, Plaintiffs fail to show a substantial likelihood of success on any such claim, *e.g.*, that the disclosures in the Notice were constitutionally deficient or that Mr. Tatulyan requested a hearing and thereby waived any Fifth Amendment right.

### 3. Denial of Procedural Due Process for Defendants' Alleged Refusal to Conduct (or allow Mr. Tatulyan to conduct) a SAFER test on Bandit

Plaintiffs' Complaint alleges Defendant Aurora refused to conduct a SAFER test on Bandit or to permit an independent evaluation of Bandit's temperament by Mr. Tatulyan's expert.[11] In the "Background" section of Plaintiffs' Motion, they argue summarily that this constitutes a denial of a right to fair hearing with due process. (Motion, page 3.) Other than this bare assertion, Plaintiffs provides neither legal authority nor analysis to show that any process due required allowing Mr. Tatulyan the opportunity to conduct whatever test he (or his expert) chose to conduct on Bandit. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481(1972))). In fact, Plaintiffs' Motion fails to address these allegations at all in the context of likelihood of success on the merits. Accordingly, Plaintiffs fail to establish a substantial likelihood of success on the merits based on these allegations.

### 4. Violations of Substantive Due Process

Defendants contend it is unclear whether Plaintiffs are also asserting a substantive due process claim, but argue that if any such claim is at issue, Plaintiffs fail to establish a likelihood of success on the merits. Plaintiffs did not reply to Defendants' arguments. The Court agrees with Defendants.

Plaintiffs' claim is premised on the alleged unconstitutional failure to provide due process "regarding the seizure of Bandit," and deprivation of Plaintiffs' "property interests." Even assuming, without deciding, that substantive due process has been pled, this component of the

---

[11] Plaintiffs' Motion also asserts that "Mr. Tatulyan was not advised prior to or at the hearing of any rights to discovery or to have Bandit evaluated by an expert of his choosing to testify as to Bandit's behavior." (Motion, page 2.) To the extent Plaintiffs again rely on the lack of a translator, such assertion is rejected for the reasons previously stated.

Due Process Clause can be violated by an arbitrary deprivation of an individual's property right. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999). "In Colorado, dogs are accorded qualified property status," *Colorado Dog Fanciers, Inc. v. City & County of Denver*, 820 P.2d 644, 653 (Colo. 1991) (citing *Thiele v. City & County of Denver*, 135 Colo. 442, 312 P.2d 786, 789 (1957)); therefore, they are "subject to the proper exercise of police power for the protection of the public's health, safety, and welfare." *Colorado Dog Fanciers, Inc.*, 820 P.2d at 653 (citing *Stone v. Mississippi*, 101 U.S. 814, 818 (1879)). If Plaintiffs are challenging a legislative enactment, the test is whether the challenged ordinance bears a rational relationship to a legitimate government interest. *Dias v. City & County of Denver,* 567 F.3d 1169, 1182-3 (10th Cir. 2009); *Brown v. Cooke*, 362 F. App'x 897, 900 (10th Cir. 2010). If Plaintiffs are challenging executive action, Plaintiffs must show the action "shocks the conscience" or demonstrate the lack of a rational relationship between the action and the governmental interest. *Dias,* 567 F.3d at 1182; *see Brown*, 362 F. App'x at 900. Plaintiffs, however, fail to discuss much less show a substantial likelihood of success on the merits of any substantive due process claim, under any test.[12]

## IV. CONCLUSION

The Court recognizes that the life of Bandit is at issue, but it is Plaintiffs' responsibility to meet their burden of showing that injunctive relief may be had. Despite a second opportunity to do so, they have not done so.[13] Accordingly, it is

---

[12] In light of the Court's determination that Plaintiffs fail to establish a substantial likelihood of success on the merits of their claim, it need not consider the other prerequisites for injunctive relief. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23-24 (2008).

[13] Defendants request a hearing, but only if the Court is inclined to grant the Motion. Plaintiffs, however, did not request a hearing. There is no indication from the parties that they would have anything further to submit for the Court's consideration. On this record, the Court finds no hearing is necessary.

**ORDERED** that Plaintiffs' Motion for Temporary Restraining Order (ECF No. 31) is **DENIED.**

DATED this 28th day of February, 2018.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge