IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-2119-RM-MLC

SUREN TATULYAN; and
PIT SISTERS, a Florida charitable organization,

        Plaintiffs,

v.

CITY OF AURORA; and JENEE (aka JENNEE) SHIPMAN
in her official and individual capacity,

        Defendants.

---

**ORDER ON PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT**

---

Magistrate Judge Mark L. Carman

This matter is before the Court on *Plaintiffs' Motion for Leave to File Second Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(2)* [Doc. 57]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the Court orders that the Motion be denied.

## BACKGROUND

This matter arises subsequent the seizure of Plaintiffs' dog, Bandit, by the City of Aurora following Bandit's January 4, 2017 attack of a delivery man. Bandit remained seized following the City's determination that his release would endanger the public, and after lengthy deliberation Bandit was ordered to be put down. On September 1, 2017, Plaintiffs filed their original Complaint, arguing the process that led to Bandit's ordered euthanasia deprived them of their Fifth Amendment and due process rights pursuant to 42 U.S.C. §1983 [Doc. 1]. Plaintiffs concurrently

1

moved for a Temporary Restraining Order ("TRO") to halt Bandit's euthanasia [Doc. 2]. That Motion was denied without prejudice for failure to show substantial likelihood of success on the claim's merits [Doc. 9]. Plaintiffs filed their First Amended Complaint on October 25, 2017, which added Jenee Shipman, the Director of the Aurora Animal Shelter, as a Defendant [Doc 11].

Plaintiffs again moved for a TRO on December 12, 2017 [Doc. 31], which stayed Bandit's scheduled December 20 euthanasia. Defendants responded by moving to dismiss Plaintiffs' Complaint [Doc. 36]. This Court denied Plaintiffs' Second TRO on February 28, 2018, again concluding Plaintiffs failed to establish they were likely to succeed on the claim's merits [Doc. 54]. Plaintiffs moved for a third TRO the same day, seeking additional time to say goodbye to Bandit and further restating their previously submitted arguments [Doc. 55]. This Court denied their third TRO Motion that same day [Doc. 56]. Bandit was euthanized on March 2, 2018 [Doc. 63 p. 3]. Plaintiffs then filed their Motion for Leave to File Amended Complaint on March 6, 2018, seeking to add factual allegations from the period following the filing of their First Amended Complaint through Bandit's death [Doc. 57]. Contemporaneously with this Order, a recommendation that Plaintiffs' First Amended Complaint be dismissed has been filed herein.

## DISCUSSION

Plaintiff seeks leave of the Court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to file its *Second Amended Complaint for Declaratory Relief and Damages* [Doc. 57]. Plaintiffs' proposed Second Amended Complaint does not add any new claims, but rather adds factual allegations "to amplify the facts and allegations alleged in the original complaint." *Id.* ¶ 51. The additional facts primarily involve (1) the health issues of Plaintiffs' lead counsel; (2) the process between the denial of Plaintiffs' second TRO and Bandit's euthanasia; and (3) the alleged "interrogation" of Plaintiffs without their counsel or an interpreter. Defendants object to allowing

the amendments, arguing the additional factual allegations do not support Plaintiffs' claim for relief and are thus futile [Doc. 64].

In their First Amended Complaint, Plaintiffs seemingly argue that the seizure and condemnation of Bandit violated their Fifth Amendment rights and did not afford them proper procedural and substantive due process. This Court has recommended that Plaintiffs' First Amended Complaint be dismissed, finding that Plaintiffs failed to allege facts and state a claim upon which relief could be granted.

1. **Standard of Review**

Rule 15, Fed.R.Civ.P., provides for the amendment of a party's pleadings prior to trial with the written consent of the opposing party or leave of the court, which should be freely given when justice requires. A court may refuse to allow an amendment when the proposed amendment would be futile. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). The proposed amendment is futile if the complaint would be subject to dismissal. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) and *Jefferson County School Dist. V. Moody's Investor's ServiceI*, 175 F.3d 848, 859 (10th Cir. 1999). The "grant or denial of leave to amend is within the discretion of the trial court and will not be disturbed, absent an abuse of that discretion." *Triplett v. LeFlore Cty., Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).

2. **Plaintiffs' Counsel's Health Issues**

Plaintiffs' proposed Second Amended Complaint alleges that their lead counsel, Jay Swearingen ("Swearingen"), underwent emergency gall bladder surgery on February 19, 2018 [Doc. 57-1 ¶ 26]. He was released from the hospital on February 26, but remained "materially unavailable" as he recovered. *Id.* ¶¶ 29, 34.

On February 28, Plaintiffs' second TRO motion was denied [Doc. 55]. Plaintiffs immediately reached out to Defendants to determine when Bandit would be euthanized [Doc. 57-1 ¶ 35]. After initially being told that Bandit would not be put down for at least a week, Defendants informed Plaintiffs an hour later that the City's policy was to perform euthanasia on Fridays, which was March 2. *Id.* ¶¶ 36-37. When Defendants refused to budge on the date, Swearingen was "forced" to file a third TRO because Swearingen's incapacity rendered him unable to "communicate" or read the order denying the previous TRO. *Id.* ¶¶ 50-51. Swearingen's third TRO was denied on March 1 [Doc. 56], and Bandit was euthanized [Doc. 63 p. 3].

It is unclear how Plaintiffs believe the above is relevant to their claim. If Plaintiffs are alleging denial of procedural due process, the Court first considers whether Plaintiffs' "possess a protected interest to which due process protection was applicable." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). If so, the Court then considers whether the plaintiffs were "afforded an appropriate level of process." *Id.*

Plaintiffs have not identified a protected interest applicable to Swearingen's situation. While Plaintiffs' proposed Second Amended Complaint describes Swearingen as unable to communicate, this is belied by the fact that he was able to file a new TRO motion. Mr. Swearingen's firm filed a detailed *Emergency Motion for Temporary Restraining Order* [Doc. 55] on the same day Plaintiff received the order denying Plaintiff's motion for a Temporary Restraining Order. The following day, Thursday March 1, 2018, this Court denied the emergency motion and Bandit was euthanized on Friday March 2, 2018. The Court is unaware of any precedent holding that Swearingen was owed additional time to prepare what was a third near-identical motion. Nor have Plaintiffs cited the Court to any authority in this regard. Accordingly,

it would be futile to add the factual allegations concerning Swearingen's health on a denial of procedural due process grounds.

### 3. <u>Circumstances Immediately Preceding Bandit's Death</u>

In their proposed Second Amended Complaint, Plaintiffs allege "Defendants violated Plaintiffs civil rights," but fail to specify what rights they are referring to [Doc 57-1 ¶ 32]. Per Plaintiffs' telling, Defendants' counsel originally informed Plaintiffs they would have "at least" a week before Bandit would be put down. *Id.* ¶ 36. However, Defendants' counsel informed Plaintiffs an hour later they had "less than 24 hours" before Bandit would be euthanized[1]. *Id.* ¶ 37. Defendants attributed the discrepancy to the City's policy of performing euthanasia on Fridays, an explanation Plaintiffs find dubious. *Id.* As a result of the short notice of Bandit's imminent demise, The Pit Sisters and the two children of Bandit's owners were unable to say goodbye to Bandit. *Id.* ¶37. It appears that Mr. Tatulyan was able to say good-bye to Bandit. Citing City policy, the City barred Plaintiffs' counsel from saying goodbye to Bandit, and did not allow Plaintiffs to watch Bandit be put down. *Id.* ¶¶ 43-44, 46.

Defendants contend the City's refusal to allow additional time before putting down Bandit, and forbidding Plaintiffs' counsel from visiting Bandit and Plaintiffs from watching Bandit's euthanasia, was "completely unreasonable" [Doc 57-1 ¶¶ 38, 41]. Plaintiffs further allege that the City's rationale for these actions – that they were all mandated by City policy – was a lie. As evidence, they cite to the affidavit of Mikal Ruins, who represents that no such policies existed when he was an Aurora Animal Control Officer [Doc. 57-3]. But Ruins only served in that capacity from January 2005 until January 2008. *Id.* It goes without saying that what the policy may have been ten years earlier is not evidence of what the policy is today.

---

[1] There appears to be some confusion in this regard. Plaintiff's motion filed on February 28, 2018 indicates that Bandit was going to be ethnized on March 2, 2018. This is more than 24 hours.

Even assuming the City of Aurora's actions were not mandated by City policy, Plaintiffs have not identified how those actions denied them due process. If Plaintiffs are alleging denial of procedural due process, Plaintiffs must show they possessed "a protected interest to which due process protection was applicable." *Hennigh*, 155 F.3d at 1253. Plaintiffs have provided no precedent, nor is the Court aware of any, which indicates that Plaintiffs possessed a due process right to have additional time for them and their counsel to say goodbye to Bandit, and to witness his death. To add factual allegations to a procedural due process claim regarding events for which no procedural due process rights exist would be futile.

Nor do the factual allegations support a substantive due process claim. A government action does not afford substantive due process if it "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). An action shocks the conscience when there is a showing the government abused its power or wielded it "as an instrument of oppression." *Furlong Enterprises, LLC v. Nickerson*, 785 F. Supp. 2d 970, 982 (D. Colo. 2011). Here, the City provided the immediate owners of Bandit sufficient time to say goodbye. While one can debate the City's decision to not allow additional time for the other family members to say good-bye, allow Plaintiffs' counsel to say goodbye or to allow Plaintiffs to witness Bandit's death, it cannot be said that the decision was an oppressive use of government power that shocked the conscience. Throughout this process, Plaintiffs have been provided ample due process, and to have allowed greater time and access to Bandit would have only drawn out and exacerbated the pain of an already lengthy and difficult episode. Because the City's actions did not shock the conscience, adding factual allegations to support a substantive due process claim would be futile.

### 4. Plaintiffs "Interrogation"

Plaintiffs allege that when they visited the Aurora Animal Shelter to say goodbye to Bandit they were accosted and interrogated by two individuals, one of whom they believe to be Jenee Shipman, the Shelter's Director [Doc. 57-1 ¶¶ 58-60]. Plaintiffs contend the conversation was improper because Plaintiffs' counsel was not present and no interpreter was provided. *Id.* ¶¶ 60-62. No information was provided at what was discussed during this meeting and the label "interrogation" is conclusory.

These allegations neither support a claim for denial of procedural due process nor denial of substantive due process. Plaintiffs have not suggested their interrogators were police or that they were placed under arrest, so *Miranda* would not apply. The Court is unaware of, and Plaintiffs have not provided, any precedent requiring counsel and an interpreter to be present in such a situation, so no protected interest was at issue and Plaintiffs thus were not denied procedural due process. Likewise, while Plaintiffs fail to detail the contents of the conversation, nothing in their proposed Complaint suggests that the City's apparent decision to speak with Plaintiffs was shocking to the conscience. It would be anticipated that an individual arriving at the animal control facility would have interactions and conversations with the staff during the process of being allowed access to say good-bye. Thus, the facts do not support a denial of substantive due process. Because the interrogation allegations do not support a due process violation, adding them to the Complaint would be futile.

## CONCLUSION

**IT IS ORDERED** that Plaintiffs' *Motion for Leave to File Second Amended Complaint* is **DENIED.**

Dated this 17th day of July, 2018

Mark L. Carman
United States Magistrate Judge