IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-2119-RM-MLC

SUREN TATULYAN; and
PIT SISTERS, a Florida charitable organization,

               Plaintiffs,               Civil Action: 17-cv-2119-RM-MLC

v.

CITY OF AURORA; and JENEE
(aka JENNEE) SHIPMAN
in her official and individual capacity,

               Defendants.

---

## RECOMMENDATION ON MOTION TO DISMISS

---

Magistrate Judge Mark L. Carman

This matter is before the Court on *Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* [Doc. 36]. The Motion was referred to Magistrate Judge Carman pursuant to the Order of Reference dated January 19, 2018 [Doc. 38]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the Court recommends that the Motion be granted.

### BACKGROUND

Plaintiff Suren Tatulyan ("Tatulyan") owned a pit bull dog named Bandit while residing in the City of Aurora, Colorado [Doc. 27 p. 2]. Pit bulls are a restricted breed in Aurora. *Id.* On January 4, 2017, Bandit attacked a FedEx driver delivering a package to Tatulyan's Aurora home. *Id.* The City of Aurora cited Tatulyan for dog running at large, keeping an aggressive dog, and keeping a restricted breed, and consequently impounded Bandit. *Id.* at 2, 6. Tatulyan was

1

informed that a hearing would be held to determine Bandit's fate, and he was "urged" to prepare and present any mitigating evidence on Bandit's behalf [Doc. 35 Ex. 1].

At the hearing, it was determined that Bandit was a pit bull and could not "be safely maintained, cared for and controlled without danger to the community" [Doc. 13 ¶ 16]. Tatulyan, who appeared at the hearing *pro se*, alleges he was not provided an interpreter or a meaningful opportunity to present evidence on Bandit's behalf. *Id.* ¶¶ 18-19. The hearing's transcript indicates that despite English not being Tatulyan's native language, he declined the panel's offer to provide him an interpreter and was provided the opportunity to present a defense on Bandit's behalf [Doc. 35, Ex. 2, and Doc 67-1][1].

Tatulyan further alleges that the City later refused to conduct a specific temperament test on Bandit, known as SAFER, or have Bandit evaluated by Tatulyan's preferred expert [Doc. 13 ¶¶ 20-21, 23]. The City held a hearing to consider Tatulyan's request for a SAFER test and to have Bandit examined by Tatulyan's expert, but declined to allow either [Doc. 54 p. 3]. Tatulyan later pleaded guilty to the criminal charges against him [Doc. 2 p. 3].

On August 24, 2017, Tatulyan transferred an undivided one-half interest in Bandit to Pit Sisters, a pit bull advocacy organization [Doc. 54 p. 4]. Tatulyan and Pit Sisters filed their original Complaint a week later [Doc. 1]. In addition to a claim pursuant to 42 U.S.C. §1983, the Complaint sought an order blocking Bandit's euthanasia. *Id.* at 4. Plaintiffs filed a Motion for Temporary Restraining Order Without Notice [Doc. 2] contemporaneously with the Complaint. That Motion was denied without prejudice for failure to show substantial likelihood of success on the claim's merits [Doc. 9].

---

[1] The parties have agreed that this Court may take judicial notice for purposes of this motion of the file regarding the proceedings in Aurora Municipal Court Summons No. K-64573, including the transcript of the proceedings of January 13, 2017 which forms the basis for many of Plaintiffs' claims [Doc. 67 & 68].

Plaintiffs filed their Amended Complaint on October 25, 2017 [Doc 11], with another Motion for Temporary Restraining Order following on December 12, 2017 [Doc. 31], which stayed Bandit's scheduled December 20 euthanasia. Defendants filed their Motion to Dismiss Plaintiffs' Complaint [Doc. 36] on January 19, 2018. This Court denied Plaintiffs' Second Motion for Temporary Restraining Order on February 28, 2018, again concluding Plaintiffs failed to establish they were likely to succeed on the claim's merits [Doc. 54]. Plaintiffs filed an Emergency Motion for Temporary Restraining Order the same day seeking additional time to say goodbye to Bandit and further restating their previously submitted arguments [Doc. 55]. This Court denied the Emergency Motion for Temporary Restraining Order that same day [Doc. 56]. Bandit was euthanized on March 2, 2018 [Doc. 63 p. 3]. Plaintiffs then filed their Motion for Leave to File Amended Complaint on March 6, 2018 [Doc. 57].

## STANDARD OF REVIEW

### B. Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all wellpleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the court may consider exhibits attached to the Complaint without converting the motion into one for

summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991)[2].

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Ashcroft*, 556 U.S. at 679. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id.* at 678. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Plaintiffs' Amended Complaint[3] sets forth a single claim, a deprivaton of rights pursuant to 42 U.S.C. §1983. Specifically, Plaintiffs allege Tatulyan was deprived of due process and "federal rights, and property interests" when Bandit was seized [Doc. 13 ¶¶ 26-27]. Plaintiffs

---

[2] See footnote 1.
[3] There were two Amended Complaints filed on October 25, 2017. The later filed Amended Complaint [Doc. 13] will be considered as the operative complaint in this matter.

specified the nature of their claims in their Response to Defendants' Motion to Dismiss [Doc. 63]. The claim is based upon five alleged violations, all of which have been presented throughout this matter in regards to the Plaintiffs' attempts to obtain restraining orders:

1. The City of Aurora failed to provide any Fifth Amendment protections for Tatulyan when he was charged with a municipal offense and was challenging Bandit's seizure.

2. Dog owners must request an impoundment hearing upon seizure of the dog and the City does not provide any Fifth Amendment protections for that request or subsequent testimony.

3. Dog owners are denied due process at the impoundment hearing by not allowing the owner access to be evaulated by an animal behavior expert of their choice.

4. Tatulyan was not provided an intrepeter at the impoundment hearing.

5. The decision by the City of Aurora, under the advice of Jenee Shipman, to have Bandit euthanized was arbitrary and lacked objective standards.

## A. Transcripts

As a threshold matter, it must be determined whether this Court may consider the transcripts of the hearings held beforer the City of Aurora. Those transcripts were not attached to the various complaints filed in this matter but excerpts have been submitted to this Court in various other pleadings by both parties. Niether Plaintiffs [Doc. 67] nor Defendants [Doc. 68] oppose considering the transcripts in evaluating this Motion.

It has long been recognized that federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). In *Tal v. Hogan*, 453 F.3d 1244, fn 24 (10th Cir. 2006) it was noted that facts subject to judical notice may be considered without converting the motion into a motion for summary judgment, including matters of public record. The notice is limited to the contents of the document, but not the proof of the matters asserted therein, citing *Oxford Asset Managemetn, Ltd*

*v. Jaharis*, 297 F.3d. 1182, 1188 (11th Cir. 2002). The Supreme Court allowed the taking of judcial notice pursuant to Rules of Evidence 201 in the context of considering a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, fn 13 (2007). In *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008), the Court approved judicial notice to those documents central to the Plaintiffs' claims which are referred to in the complaint. Accordingly, this Court finds that the transcripts can be considered in evaluating Defendants' Motion to Dismiss.

### B. Fifth Amendment

Plaintiffs allege that Tatulyan's Fifth Amendment rights were violated because Tatulyan had to both defend himself from criminal charges as well as challenge Bandit's impoundment at a municipal hearing [Doc. 63 pp. 2-3, 10-12]. The Fifth Amendment protects not only testimony at a criminal proceeding but also "compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States v. Hubbell*, 530 U.S. 27, 37 (2000). By appearing at the municipal hearing, Plaintiffs argue, Tatulyan was indirectly providing evidence he was guilty of one of the criminal charges against him – that he illegally owned a pit bull in Aurora [Doc. 31 pp. 5-6]. Plaintiffs contend this situation impermissibly forced Tatulyan to choose between waiving his right to avoid self-incrimination and dropping his challenge to Bandit's impoundment. *Id.* at 6-7.

Plaintiffs' Fifth Amendment allegations are not found in their Complaint aside from a single bare reference. [Doc. 11 ¶ 5]. In addition, Plaintiffs' briefing failed to direct this Court to any authorities indicating such a scenario violates the Fifth Amendment's self-incrimination protection. Rather, the caselaw supports that Tatulyan was protected from self-incrimnation in that his involvement in the hearing in regards to Bandit's breed status could not have been used against him in his criminal proceedings. *See Colorado Dog Fanciers, Inc. v. City & Cty. of Denver*

*By & Through City Council,* 820 P.2d 644, 649 (Colo. 1991) ("no pit bull determination made for regulatory purposes ... may be used to support a subsequent criminal charge."). Further, Tatulyan was told at the impound hearing that he had the right to remain silent, and Tatulyan opted not to testify and instead had his son speak on Bandit's behalf [Doc. 65-1 pp.3-4]. While Tatulyan did not testify at Bandit's hearing, he did present photos of Bandit and neighbors' letters supporting Bandit [Doc. 67-1]. There is no indication that Tatulyan's eventual guilty plea to owning Bandit, which came while he was represented by an attorney, was motivated by concern that evidence from Bandit's hearing would be used against him. Accordingly, Plaintiffs' Complaint lacks sufficient factual matter to support a plausible claim for relief on the basis of a Fifth Amendment violation.

### C. Procedural Due Process

#### 1. Standard of Review

When evaluating a denial of procedural due process claim, the Court employs a two-part test. *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998). First, the Court considers whether Plaintiffs' "possess a protected interest to which due process protection was applicable." *Id.* Second, the Court considers whether the plaintiffs were "afforded an appropriate level of process." *Id.* The fundamental question when evaluating due process is whether the plaintiff had "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)(quotations omitted).

#### 2. Preferred Expert + Exam

Plaintiffs claim Tatulyan was denied procedural due process because the City refused to allow Bandit to be examined by Tatulyan's preferred expert under Tatulyan's preferred SAFER

exam [Doc. 63 pp. 3-4]. Thus, Plaintiffs argue that Tatulyan was denied the ability to fully present a defense, and the City seized Tatulyan's property – Bandit – without proper due process. *Id.*

In order to plead a due process claim, Plaintiffs must show they had a protected property interest and were not afforded an appropriate level of process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Defendants do not dispute that Plaintiffs had a property interest in Bandit [Doc. 65 pp. 6-7]. Thus, the question is whether Plaintiffs were afforded an appropriate level of process when their request to conduct an independent SAFER exam of Bandit was denied.

Because Plaintiffs had a protected property interest in Bandit, an appropriate level of process afforded them a "hearing before the government acts to impair that interest, although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." *Camuglia*, 448 F.3d at 1220. A hearing was held to consider Tatulyan's request for a SAFER test, which was denied [Doc. 54 p. 3]. Plaintiffs have provided no evidence or caselaw suggesting that they were entitled to a SAFER test or preferred expert, let alone that they were entitled to further due process beyond the hearing that was held. Rather, they argue that "fundamental fairness" demands they be permitted to conduct their own test of Bandit [Doc. 63 p. 12]. But *Camuglia* has no fairness exception, and is clear that the Government has wide discretion to determine the hearing's paramaters. Here, the City determined that allowing an outside expert to examine Bandit would expose the City to liability [Doc. 63 p. 13]. Such a decision was within the City's discretion. Because Tatulyan *was* provided a hearing on his request for a SAFER test and an independent expert, he was afforded adequate procedural due process.

### 3. Interpreter

Plaintiffs also claim Tatulyan was denied due process because he was not provided an interpreter at Bandit's hearing [Doc. 63 pp. 3-4, 14-16]. The transcript from the hearing shows that Tatulyan was offered an interpreter, clearly understood that offer and knowingly declined it:

> THE COURT: Are you comfortable with us conversing here in English or do you feel that you'd be better off with a Russian interpreter?
>
> MR. TATULYAN: No, I don't want to take your time, because I understand what the prosecutor wanted and we go to the -- two charges today and one later. Everything is perfect.
>
> THE COURT: Do you understand everything I am saying to you today?
>
> MR. TATULYAN: Yes, sir.
>
> THE COURT: The Court will find that we are conversing in English, it seems adequately. Did you have a chance to read your rights here?
>
> MR. TATULYAN: Yes, sir.
>
> THE COURT: Do you have any questions about those rights on that form?
>
> MR. TATULYAN: No, sir.

[Doc. 35 Ex. 2 pp. 2-3]. Even assuming Tatulyan had a due process right to an interpreter during a municipal hearing, he cannot now claim he was denied a right that he clearly and knowingly waived. *Estelle v. Williams*, 425 U.S. 501, 524 (1976). The decision to waive the interpreter was Tatulyan's alone to make. *United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980)("a waiver of an interpreter is not a decision for his counsel or the Court to make. It is the defendant's decision..."). Therefore, Tatulyan was not denied due process when he declined the offer for an interpreter.

Nor does the transcript support Plaintiffs' contention that Tatulyan did not understand the hearing and was thus denied procedural due process [Doc. 53 pp. 15-16]. A reading of the entire

9

transcript reveals that while Tatulyan did not speak perfect English, he repeatedly asked questions [Doc. 67-1 pp. 50-51], answered questions [Doc. 67-1 pp. 23-24, 46-47] represented he understood the proceedings [Doc. 67-1 pp. 7-8] and provided the panel with sufficient information to make an informed decision [Doc. 67-1 pp. 42-44]. While Tatulyan opted for an interpreter in later proceedings, this does not negate that his questions and responses at the initial hearing indicated Tatulyan both understood the proceeding and fully participated in it. A hearing affords sufficient due process if the accused asked questions and gave indications that he understood the proceedings. *United States v. Hasan*, 686 F.3d 1159, 1168–69 (10th Cir. 2012). The transcript clearly shows Tatulyan was accordingly afforded sufficient due process.

### 4. Decision to Euthanize Bandit

Finally, Plaintiffs contend they were denied procedural due process because the procedure that determined that Bandit should be euthanized was arbitrary [Doc 63 pp. 4-5]. Specifically, Plaintiffs take issue with Jenee Shipman, the Director of the Aurora Animal Shelter who recommended Bandit be euthanized, for not setting out objective standards when weighing Bandit's fate. *Id.*

The decision to euthanize Bandit was governed by Aurora Municipal Code, Sec. 14-4 (g), which states that when "determining whether the [seized] animal can be safely maintained, cared for and controlled by its owner, the judge shall consider all relevant and reliable evidence, whether or not the evidence is admissible at trial, including, without limitation, pre-bite or post-bite behavior indicative of aggressive or dangerous tendencies regardless of impoundment status." The record shows that, following a vicious, unprovoked attack, the City held an inquest as to whether Bandit could safely remain a member of the community, and after carefully considering all relevant evidence with the guidance of Ms. Shipman, determined he could not. The evidence considered

included that provided by Tatulyan in Bandit's favor. The "fundamental requirement of due process is the opportunity to be heard." *Mathews*, 424 U.S. at 333. That fundamental requirement was met when Tatulyan was provided notice of and attended a hearing where he presented evidence and witnesses, including his son, on Bandit's behalf [Doc. 67-1]. Plaintiffs have provided no evidence that the City and Ms. Shipman had a constitutional obligation to provide greater due process than what Tatulyan was afforded.

### D. Substantive Due Process

#### 1. Seizure of Bandit

Substantive due process protects a party from the deprival "of property for an arbitrary reason regardless of the procedures used to reach that decision." *Onyx Properties LLC v. Bd. of Cty. Commissioners of Elbert Cty.*, 838 F.3d 1039, 1043 (10th Cir. 2016). Dogs in Colorado are "accorded qualified property status." *Am. Canine Found. v. City of Aurora, Colo.*, 618 F. Supp. 2d 1271, 1277 (D. Colo. 2009). Deprival of property interest is only deemed unconstitutional when the deprival was arbitrary, capricious, or without a rational basis." *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir.1998)(quotations omitted). Plaintiffs bear the burden of establishing they were denied substantive due process. *Hernandez v. Soares*, No. CIVA 02CV01495MSKBNB, 2006 WL 2050990, at *5 (D. Colo. July 20, 2006).

The seizure of Bandit did not violate substantive due process. Bandit violently attacked someone without provocation. Dogs can be seized in Colorado to protect "the public's health, safety, and welfare." *Colorado Dog Fanciers, Inc. v. City & Cty. of Denver By & Through City Council*, 820 P.2d 644, 653 (Colo. 1991). Given Bandit's attack, the seizure of Bandit was rationally related to a desire to protect the public, and did not violate substantive due process.

### 2. Denial of Outside Expert

Plaintiffs seemingly argue that the City's decision to deny Tatulyan's request to have Bandit undergo a SAFER exam by an independent expert did not afford substantive due process. Where an executive action is being challenged, the action will be upheld unless it "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Here, the City of Aurora held a hearing before determining that Tatulyan was not entitled to have Bandit examined by his preferred expert under the SAFER test [Doc. 54 p. 3]. According to Plaintiffs, the City concluded that allowing an outside expert would open them up to liability should Bandit attack an examiner [Doc. 63 p. 13]. While one can disagree with the City's rationale, as Plaintiffs do, it cannot be argued that such a decision is shocking to the conscience. Accordingly, the City's decision to refuse allow an independent expert to conduct the SAFER exam on Bandit did not violate substantive due process.

### 3. Decision to Euthanize Bandit

Finally, Plaintiffs argue the procedure that determined that Bandit should be euthanized was arbitrary and lacked objective standards, denying them substantive due process [Doc 63 pp. 4-5]. Only the "most egregious official conduct can be said to be arbitrary," and it must "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 846 (1998).

As discussed *supra*, the decision to euthanize Bandit came only after multiple hearings and input from Animal Control. Following the inquiry, it was determined that Bandit, who had violently attacked a delivery man, would be euthanized to protect the public. As with the decision to deny an outside expert and SAFER test, it cannot be said that the decision to have Bandit put down was egregious or shocking to the conscience given his unprovoked attack. Accordingly, the decision to have Bandit euthanized afforded Plaintiffs substantive due process.

## CONCLUSION

It is easy to sympathize with Tatulyan's loss. But that sympathy cannot obscure that Plaintiffs have failed to provide any legal support suggesting the process that led to Bandit's euthanasia was constitutionally infirm. Accordingly, it is recommended that Defendants' Motion to Dismiss [Doc. 36] be GRANTED for failure to state a claim upon which relief may be granted, and this case be dismissed with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-

claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 17th day of July, 2018.

_____
Mark L. Carman
United States Magistrate Judge
District of Colorado

